UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUTHU YURICK,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 15-01391-KES<br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Thuthu Yurick ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.

## BACKGROUND

    Plaintiff applied for DIB and SSI on April 17, 2012, alleging the onset of disability on December 31, 2010. Administrative Record ("AR") 171, 178. On October 8, 2013, an ALJ conducted a hearing, at which Plaintiff, who was

represented by counsel, appeared and testified. AR 25-64.

On December 4, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 8-21. The ALJ found that Plaintiff had the severe impairments of "chronic pain; diabetes mellitus; hypertension; arthritis; and gastroesophageal reflux disease." AR 13. The ALJ found Plaintiff's medically determinable impairment of depression to be non-severe. AR 14.

Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of medium work activities. AR 16. Based on this RFC and the testimony of a vocational expert ("VE"), at step four of the sequential evaluation process the ALJ found that Plaintiff could still perform her past relevant work as a nail shop owner, nail shop helper or assembly supervisor.[1] AR 19-20. Alternatively, at step five, the ALJ found that Plaintiff would be able to perform alternative occupations including office clerk and telephone clerk. AR 20-21. Based on these findings, the ALJ concluded that Plaintiff is not disabled. Id.

## II.

## ISSUES PRESENTED

Issue No. 1: Whether the ALJ properly considered the medical evidence in determining Plaintiff's RFC.

---

[1] The ALJ's decision says that Plaintiff's third past relevant position was that of "manager, DOT 189.117-022" (AR 20), but after the VE heard Plaintiff describe her actual duties, he testified that he needed to "recode" that position as an assembly supervisor, DOT 869.131-030. AR 54. This Court therefore interprets the ALJ's finding concerning Plaintiff's ability to perform her prior work as intending to reference Plaintiff's prior position as an assembly supervisor. Later in his decision, the ALJ specifically found that Plaintiff could perform the position of assembly supervisor. AR 20. Whether this finding was made at step four or step five of the sequential evaluation process is immaterial to the determination that Plaintiff is not disabled.

<u>Issue No. 2</u>: Whether the ALJ properly assessed Plaintiff's credibility in discounting her testimony concerning subjective complaints.

<u>Issue No. 3</u>: Whether the ALJ properly considered "vocational issues" at both steps four and five. See Dkt. 18, Joint Stipulation ("JS") at 4.

## III.
## DISCUSSION

**A.    The ALJ's RFC Determination is Supported by Substantial Evidence.**

**1.    Standard of Review.**

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). To do so, the ALJ will consider the medical evidence, resolve conflicts and determine "the most" a claimant can still do despite his/her limitations. 20 C.F.R. § 404.1545(a).

On judicial review, the district court will uphold the Social Security Administration's RFC determination "unless it contains legal error or is not supported by substantial evidence." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "must be 'more than a mere scintilla,' but may be less than a preponderance." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quoting <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir.2009)). The reviewing court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). However, if "the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." <u>Molina</u>, 674 F.3d at 1111. Overall, the standard of review is "highly deferential." <u>Valentine</u>, 574 F.3d at 690.

**2.     Plaintiff's Contentions.**

The ALJ's determination that Plaintiff has the RFC to perform "medium" work equates to a finding that Plaintiff can lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and that she can walk or stand for approximately 6 hours of an 8-hour workday. 20 C.F.R. §§ 404.1567 and 416.967; S.S.R. 82-10.

Plaintiff contends that this determination is "inconsistent with the vast majority of medical evidence in this record." JS at 5. Plaintiff string cites to her medical records describing complaints of muscle spasms and pain. Id. Plaintiff does not, however, identify any specific medical opinion evidence that she contends the ALJ failed to evaluate properly.

**3.     Discussion.**

The record in this case contains approximately 150 pages of medical evidence. AR 262-413. The medical evidence consists of: (1) 2012 and 2013 treatment records from the Riverside County Regional Medical Center; and (2) a 2012 psychiatric evaluation performed as part of the disability evaluation process.

Plaintiff's treatment records reflect a June 2012 steroid injection to her left knee. AR 264. Despite her alleged knee pain, Plaintiff's treating physician considered Plaintiff's gait to be normal. AR 262. In September 2012, Plaintiff complained of back pain and foot pain. AR 331. This was followed by a period of taking over-the-counter pain medications such as Tylenol and ibuprofen. AR 331, 333. Plaintiff had an x-ray of her spine which showed "splinting of the lumbar spine" and "findings which suggest paraspinous muscle spasms." AR 337-38. An examination of her feet revealed plantar surface skin lesions causing tenderness to the touch. AR 356. A series of May 2013 x-rays showed some mild degenerative changes affecting Plaintiff's knees and feet, no significant degenerative changes affecting Plaintiff's ankles, wrists,

hips, or shoulders, and "minimal spondylosis" affecting Plaintiff's back. AR 391-407. In September 2013, Plaintiff's doctor noted that her gait and posture remained normal. AR 411. The ALJ did not err in concluding that these findings are inconsistent with a claim of total physical disability.

The ALJ also discussed the fact that the frequency and type of treatment Plaintiff sought for pain was consistent with an RFC of medium work. AR 17. As discussed below, the ALJ gave specific and legitimate reasons to discount Plaintiff's testimony concerning the disabling effects of her pain.

For all of these reasons, the ALJ's RFC determination is supported by substantial evidence.

**B.     The ALJ Gave Clear and Convincing Reasons for Discounting Plaintiff's Credibility.**

**1.     Applicable Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59

**2. Analysis.**

Following the two-step process outlined above, the ALJ found that Plaintiff's statements considering the intensity, persistence and limiting effects of her symptoms are not entirely credible. AR 16-19. The ALJ gave four reasons for discounting Plaintiff's credibility: (1) the functional limitations allegedly caused by Plaintiff's symptoms were not supported by the objective medical evidence; (2) since the alleged onset date, Plaintiff had received "routine, conservative, and non-emergency" treatment; (3) Plaintiff's activities of daily life are inconsistent with total disability; and (4) evidence suggests Plaintiff filed for benefits because she was unable to secure employment, not

because she was to disabled to work.  AR 17-18.

### a. The objective evidence was inconsistent with Plaintiff's testimony regarding the severity and extent of her limitations.

The ALJ's determination that the objective evidence is inconsistent with Plaintiff's testimony regarding the severity and extent of her limitations is supported by substantial evidence.  As noted above, the ALJ thoroughly discussed the medical evidence.  The ALJ cited various examinations, x-rays and tests and accurately noted that while they documented some minor issues, the weight of the findings were consistent with a claim of total physical disability.  The ALJ also cited the opinions of agency doctors who reviewed Plaintiff's initial and updated medical records and opined that Plaintiff had only non-severe impairments.  AR 18 citing AR 69, 87.

### b. Plaintiff's conservative treatment was inconsistent with an alleged inability to perform all work activity.

An ALJ may consider evidence of conservative treatment in discounting testimony regarding the severity of an impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).  "Infrequent, conservative treatment is not indicative of a disabling impairment."  Jimenez v. Colvin, 2013 U.S. Dist. LEXIS 88614, at *14 (C.D. Cal. June 24, 2013) (citing Tommasetti v. Astrue, 533 F.3d 1035, 1039-1040 (9th Cir. 2008)).

In February 2012, Plaintiff was taking "tramadol to manage her pain, which provided some pain relief."  AR 18, citing AR 276 ("tramadol help").  In June 2012, Plaintiff received a steroid injection in her left knee.  AR 264.  In September 2012, Plaintiff reported that she was only taking Tylenol for pain and did not want Vicodin.  AR 18, citing AR 331.  By September 2013, Plaintiff was taking tramadol again. AR 409.

The ALJ did not err in characterizing this treatment history for pain management as conservative. While a series of injections might not be conservative, one injection administered years after the alleged onset date followed by over-the-counter pain medication is. See Hanes v. Colvin, 2016 U.S. App. LEXIS 10564, at *2 (9th Cir. June 10, 2016) (upholding ALJ determination that treatment "which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise" was conservative"); Walter v. Astrue, 2011 U.S. Dist. LEXIS 38179, at *9 (C.D. Cal. Apr. 6, 2011) (finding that ALJ permissibly discounted plaintiff's credibility based on conservative treatment, which included Vicodin, physical therapy, and a single injection).

While Plaintiff took tramadol at various times, this limited use of tramadol did not render her treatment non-conservative. See De La Cruz v. Colvin, 2016 U.S. Dist. LEXIS 49238, at * 16-17 (C.D. Cal. Mar. 7, 2016) ("[W]hile Plaintiff was prescribed and took Tramadol, a narcotic-like pain reliever, for approximately one month, later treatment records show that Plaintiff was treating her pain with ibuprofen or Tylenol"); Jimenez v. Colvin, 2013 U.S. Dist. LEXIS 88614, at *14(C.D. Cal. June 24, 2013) (upholding ALJ's determination that treating "consisting of Tramadol and over-the-counter Motrin" was conservative).

In addition, the ALJ noted a significant gap in treatment history, noting that Plaintiff "has received treatment for joint pain since 2012" despite an alleged onset date of 2010. AR 17. In assessing the claimant's credibility, "unexplained, or inadequately explained, failure to seek treatment … can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

      **c.**     **Plaintiff's daily activities are inconsistent with total disability.**

The ALJ may reject a claimant's testimony concerning the disabling nature of her symptoms when that testimony is inconsistent with the claimant's daily activities. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ accurately summarized Plaintiff's regular activities as follows: "[C]laimant admitted that she could take care of her own personal hygiene without assistance, prepare simple meals, sweep the floor, do her laundry, water her plants, drive a car and shop for groceries. In addition, the claimant said that she sewed once a month. She also acknowledged that she went to the movies or out to lunch once per month." AR 17, citing AR 223-26.

The ALJ did not err in concluding that this level of activity is inconsistent with total disability. See Batson v. Comm'r of the SSA, 359 F.3d 1190, 1196 (9th Cir. 2004) (upholding adverse credibility determination where claimant asserted he "could not return to work because of pain, yet he also testified that he tends to his animals, walks outdoors, goes out for coffee, and visits with neighbors"); Hanes v. Colvin, 2016 U.S. App. LEXIS 10564, at *1-2 (9th Cir. June 10, 2016) (upholding adverse credibility determination where claimant's daily activities included "cooking, cleaning, doing laundry, driving, shopping, visiting with family, and traveling")

      **d.**     **The ALJ could consider Plaintiff's stated motive for seeking benefits.**

In July 2012, Plaintiff's treating physician noted under patient history that Plaintiff was considering suicide rather than being a burden to her daughter or "controlled" by her family members, consistent with her "cultural beliefs." AR 342-43. The doctor then noted, "Patient reports plans of how to obtain money in the future including applying for disability. Patient does

recognize that she has skills for employment, but she doesn't see any opportunities for employment currently." Id. The ALJ noted this as evidence suggesting Plaintiff was seeking benefits due to her inability to secure employment rather than disability. AR 17.

Disability benefits are only available to persons who are unable to work because of their disability. A claimant's statements regarding "career-related reasons for seeking disability" benefits can "constitute affirmative evidence of malingering." Tolman v. Colvin, 2015 U.S. Dist. LEXIS 163867, at *18-19 (C.D. Cal. Dec. 7, 2015) (citing Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010)). Thus, the ALJ did not err in discounting Plaintiff's credibility due to her statement to her doctor that she was seeking benefits because she had been unable to find employment rather than because she was too disabled to work.

**C. The ALJ Did Not Err in Determining that Plaintiff Can Perform Her Past Relevant Work as an Assembly Supervisor.**

**1. Plaintiff's Contentions.**

At step four, the ALJ found that Plaintiff could perform her past work as a nail salon owner (DOT 299.137-010), nail salon helper (DOT 209.562-010) or assembly supervisor (DOT 869.131-030)[2] either as actually performed by Plaintiff or as generally performed. AR 19-20. The ALJ relied on testimony by the VE that all of these jobs could be done by someone with the RFC to perform a full range of medium work. AR 47, 54.

Plaintiff contends that she did not earn sufficient wages as a nail salon owner or helper for those prior positions to count as significant gainful activity ("SGA"). JS at 13. Plaintiff further contends that the ALJ erred in finding that Plaintiff previously worked as a "manager" rather than an "assembly supervisor." JS at 14.

---

[2] See n. 1.

## 2. Discussion.

At step four, a claimant has the burden to prove that he cannot perform his past relevant work either as actually performed or as generally performed in the national economy. Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). The ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report. Id. (citing S.S.R. 82-61.) A job qualifies as past relevant work only if it involved substantial gainful activity. 20 C.F.R. §§ 404.1560, 404.1565, 416.960 and 416.965. Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities. 20 C.F.R. §§ 404.1571-404.1572 and 416.971-416.975.

### a. SGA

Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity. The regulations provide "guidelines" for determining when work is presumptively SGA based on the claimant's average monthly earnings. 20 C.R.F. § 404.1574. Plaintiff reported that she earned $9,723 in 2006 as a nail salon owner which is about $810/month, just shy of the $860/month guideline for presumptive SGA. See www.ssa.gov/oact/COLA/sga.html (setting the minimum amounts for SGA in 2006 at $860/month). Plaintiff made even less per month as a nail salon helper in 2009. AR 185-86.

If a job is presumptively not SGA because of low earnings, then the burden shifts to the Commissioner to find based on substantial evidence that the claimant engaged in SGA. Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). The regulations allow the ALJ to consider: (1) the nature of the claimant's work, (2) how well the claimant does the work, (3) if the work is

done under special conditions, (4) if the claimant is self-employed, and (5) the amount of time the claimant spends at work. Id. at 515-16, citing 20 C.F.R. §§ 404.1573 and 416.973.

Here, the ALJ did not discuss these factors. Rather, the ALJ found without discussion that Plaintiff performed the jobs of nail salon owner and helper "at the level of substantial gainful activity." AR 20.

Respondent argues that had the ALJ considered the factors set forth in the regulations, he would have concluded that at least the position of nail salon owner was SGA due to Plaintiff's self-employment. As Respondent points out, when a claimant is self-employed as the owner of a business and thus controls her own wages, low wages alone should not preclude a finding of SGA. Here, however, evidence concerning the other factors does not support a finding of SGA. Plaintiff testified that the nail salon was more of an "investment" for her than a job and that she rarely went to the salon, except on weekends. AR 48. When she did go to the salon, she would help with cleaning or greeting customers, but her niece was the manager. AR 49-50. Given this testimony, it is unclear to the Court that the ALJ would have found that the nail salon owner or helper positions were SGA had he performed a factor-based analysis.

That said, Plaintiff does not dispute that her prior work corresponding to the "assembly supervisor" DOT code was SGA and that it requires only light or medium exertion (i.e., exertion consistent with Plaintiff's RFC as determined by the ALJ). Since Plaintiff did not carry her burden of proving that she cannot perform this past relevant work, any error at Step Four concerning the nail salon owner or helper positions was harmless error. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (a decision of the Commissioner will not be reversed for harmless error).

Because the ALJ lawfully concluded that Plaintiff was not disabled at step four, the ALJ was not required to engage in step five. This Court, therefore, declines to address Plaintiff's allegations of error at step five.

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: June 20, 2016

*Karen E. Scott*

KAREN E. SCOTT
United States Magistrate Judge